The last case on the docket for today is Peeble v. Perkins, which is 5-14-476. Counselor, are you ready to proceed? Yes, sir. May it please the Court, and my colleagues from the State, my name is Ian Barnes. I'm the officer of the State Adult Defender on behalf of Mr. Perkins. The purpose of the Post-Conviction Hearing Act is to serve as a backstop for constitutional deprivations that could not be litigated on direct appeal. And in furtherance of that purpose, the third stage evidentiary hearing functions as a means to develop those claims so that the circuit court can determine if relief is warranted. To fulfill the act's purpose of developing these claims, the statutory right to counsel must impose some obligation on counsel in developing the record. Mr. Perkins has raised two arguments before this Court. The first is that the statutory right to counsel imposes an obligation on post-conviction counsel to perform confidently with respect to presenting evidence at the hearing and excluding any admissible evidence at the hearing. And his second argument is that he did not receive this reasonable assistance. To begin with, we start from the foundation that the statutory right to counsel obligates counsel to perform reasonably at the second stage, where they are required to comport with the requirements of Rule 651C. They are to meet with a defendant, review the record, and amend the petition as necessary. But our Supreme Court has held that the purpose of But this Court has said that counsel has an obligation to argue the merits of the petition as well. And that leaves something of a paradox in terms of our post-conviction jurisprudence, because counsel is obligated to behave reasonably at the second stage, and they're obligated to argue the merits of the petition. But the purpose of the third stage hearing, which is to admit evidence, testimony, depositions, affidavits, there is no case law regarding counsel's performance with respect to that evidence. And that leaves a gray area, because it means that the purpose of the evidentiary hearing goes unfulfilled. We have no guarantee that counsel is behaving reasonably in terms of admitting evidence, which, of course, there is no mechanism that removes counsel at the third stage. They are appointed at the second stage. The representation continues into the third stage, where the act contemplates the presentation of evidence, and that counsel is going to be the one doing that presentation of the evidence. But there is no obligation that they do so reasonably. And that takes away from the goal of the hearing, which is to create and develop a record upon which the Supreme Court can evaluate the claim. If there is no obligation on counsel at that point, then the goal of the third stage hearing, and indeed the entire act, is aspiration, because we have no guarantees of counsel's performance. And it matters because the Post-Conviction Hearing Act is the backstop. There is no backstop for the backstop. So if a claim sneaks by at the trial level and isn't litigated because it's not in the record or it wasn't developed fully, the Post-Conviction Hearing Act is the defendant's opportunity to do this. So there must be some level of representation required at this hearing. And I would suggest that when we consider what reasonable assistance means, it's defined as the level of assistance required by the act. And I would urge Your Honor to find that the level of assistance required by the act is the amount of assistance necessary to fulfill the purpose of the act, to develop the record. And Mr. Perkins did not get the benefit of that in this case. Specifically, I raised two claims on behalf of Mr. Perkins. One, that his counsel did not function reasonably with respect to objecting to evidence that was inadmissible. And two, cross-examining vigorously in a way that went beyond skin-deep cross-examination. Mr. Perkins' claim was that his trial counsel had never investigated his alibi. Excuse me. Specifically, that he was in Florida at the time of the offense. And Mr. Perkins' mother testified at his evidentiary hearing that Mr. Perkins moved to Florida, that he was already in Florida on July 20th, 2009, which was the date of the offense. She also testified that she had never spoken to trial counsel and did not know who she was. Mr. Perkins testified that he moved to Florida about two weeks before his birthday, which was July 29th, 2009, putting him in Florida about a week before the offense. And that he had told trial counsel about his alibi, and that she had told him she investigated it and determined it wasn't viable. But upon speaking to his family members, Mr. Perkins learned that trial counsel had never spoken to his family members. Now conversely, trial counsel testified for the state that she had spoken to Mr. Perkins' mother in the hallway of her office, and that Mrs. Perkins had said Mr. Perkins moved to Florida after the date of the offense. Now the issue there is trial counsel did not offer any foundation for that conversation. She did not specify when that conversation took place, and the state did not attempt to elicit that information, making the contents of that conversation inadmissible. Counsel, what difference does that make? That's a good question, and it's important for a number of reasons. First of all, the contents of that conversation was the corruption of the state's case that trial counsel had investigated, because trial counsel's testimony about her other efforts to investigate was largely irrelevant. She could not remember who she'd spoken to, whether she'd spoken to anyone in general, Mr. Perkins' other family members, and in any event, she didn't testify as to the contents of any of those conversations that would have informed why she thought alibi wasn't a viable offense. Her conversation with Mrs. Perkins was the state's case. But on top of that, not having foundation for that conversation meant that post-conviction counsel could not follow up in cross-examination. And thirdly, this was a date-specific offense, when the offense happened and where Mr. Perkins was at the time. If the trial court believed Mr. Perkins and his mother, he was not in Illinois at the time of the offense. If the trial court believes trial counsel, Mr. Perkins was in Illinois at the time of the offense, and that's why it matters. You're saying credibility is why it matters. I'm saying that the reason we have foundational rules is to prevent inadmissible testimony from going to the trial effect, and post-conviction counsel did not do that. He did not shield his client from inadmissible evidence that directly prejudiced his case. It directly rebutted Mr. Perkins' testimony and that of his mother. And that was the prejudice. Without that testimony, the state really had no basis to argue that trial counsel had investigated this alibi. So if you take away that evidence, Mr. Perkins wins. That is why it matters. And this was the route to victory for Mr. Perkins in this hearing, keeping out this the ways in which his cross-examination was deficient. Those are the only two ways Mr. Perkins had any chance of victory in this case. Did the trial judge ask him if there was sufficient evidence to show that there was a violation of the law, or did the S-Counsel add it all? And he said that he did this or did that. I'm not sure I follow your question. Well, did the trial court, after he got the plea, did he say, is there sufficient evidence to back up this plea, more or less, to count to the, I guess, to the prosecutor? You're asking if there was a factual basis to it. Right, yeah, right. I believe there was. And the prosecutor said that your client did, was agbat or was it battery? Agbat with a firearm. Yeah, yeah. Yes, but the problem there is that Mr. Perkins' claim is that he felt coercively and guilty because his counsel did not investigate his alibi and he felt like he didn't have another choice. And, in fact, his trial counsel tried to get him to claim self-defense. And Mr. Perkins has maintained all along that he was not in Illinois, so his trial counsel was essentially telling him to commit perjury. And that was why he felt compel to plead guilty, because he had no other choice. His counsel was not going to pursue the defense. He was there when the question was asked, the fact question. The factual basis that I stipulated to you, yes. And he didn't say anything? Not at the time, no. If your Honor does not have any further questions. Thank you. Thank you. Good afternoon again, Your Honors. The Inclusive Court, counsel. For the record, this is Patrick Daly for the State. Ordinarily, whether a defendant receives reasonable assistance in post-conviction counsel is guided by Rule 651C, which establishes certain things that an attorney for a post-conviction petitioner, what they're supposed to do to aid them to prepare a petition for presentation. I'm in accord with counsel that what's unusual about this is this sort of falls outside the parameter where we're talking about the actual performance of counsel. As counsel during the hearing itself, this Court has essentially answered that question in Hot Wagner, that while we don't apply the Sixth Amendment Strickland Standard per se, we use it as a guiding principle, if you will, to assess the performance of counsel. There's an academic debate that can come from that, perhaps, and that interplay between a much higher and a much lower standard. But it's suffice to say here, at least, that if the defendant cannot establish that counsel, that he was prejudiced by counsel's performance, that we would understand that concept in the Sixth Amendment Strickland Standard. And certainly, he's not going to be able to establish that he's denying the reasonable assistance of counsel, which is generally universally considered to be a much lower standard. So the State's argument and position in this case falls along that line, and the defendant here has failed to establish, and we treat it as essentially a straight-up Strickland analysis, that he was prejudiced by counsel's performance. Counsel, defendant, raises a number of arguments that relate to his objection to the way counsel, post-conviction counsel, conducted cross-examination and generally conducted the hearing. We'll go through a couple of those, and we'll start out with the first one, which was the argument that counsel should have raised a lack of foundation, objection to McElroy's testimony. Now, again, we're looking at this in terms of prejudice, okay? And the supposition, of course, is that from the defendant's standpoint, that this would have been a successful objection, and in the absence of this, then the State would have been left with really nothing to rebut the defendant's argument that they had not been contacted, even though they had, you know, the witnesses had not been contacted about their McElroy testimony, that counsel had not actually made some, you know, strategic decision that McElroy testimony, McElroy defense was not viable in this case. Foundation is kind of one of those law school things where it can mean a lot of different things, but it almost always means one thing in every context, and that it's tied to some more concrete objection that's being raised in court. And oftentimes you see it in terms of relevancy or personal knowledge of a witness about that which is being testified to. What it really kind of does in most contexts is it makes the performance of the evidence establish something more specific than just a broad proposition that an event occurred. You have to give details to the event to lend it credibility, to lend it personal knowledge, to, you know, reliability so that the trier of fact when you hear it, it's the type of evidence that can be considered to be one that is a basis of credibility. Let me contrast what the testimony here is with what might be considered to be a lack of foundation. McElroy is being questioned. Did you have a conversation with Patsy Perkins? Yes, I did. And as a result of that, what happened? Well, I decided that there was not an alibi, not an alibi defense that could be made in this case, and I decided to tell the defendant that. Well, there's no foundation there. We don't know exactly what happened. We don't know the circumstances. We don't know the nature of the conversation. We don't know where it took place, okay? And we don't know when it took place. This is what sort of defendants kind of latches on to. And I'll talk about that here in a second. So when we look at what the actual testimony was here, it's a very definitive testimony. We know where it took place. It took place at the public defender's office. We know where within the public defender's office it took place. It was in the hallway by the secretary's office, okay? We have a specific subject matter of the conversation, which is in regards to the alibi, and when, you know, there is the ultimate determination that the alibi that's being proposed by Patsy Perkins occurred after the defendant's birthday when the crime had actually occurred prior to the defendant's birthday, and therefore, Ms. McElroy made a determination that the alibi was not going to be a viable defense. Now, when we talk about the time, again, Ms. McElroy is testifying from memory without notice about an event that occurred years earlier. So she's in less than equal circumstances, she's quite definitive about that conversation. But moreover, you know, if we can't pinpoint that it happened on September, you know, 19th of 2014, what we do know is it occurred certainly between the point where McElroy had been made aware of the defendant's alibi defense and where McElroy had made a determination that the alibi defense was not going to work. So I would submit to Your Honors that if there had been a foundation objection, it would not have been successful under these particular circumstances. And that being the case, if there's no error in not raising the objection, certainly the defendant is not going to be able to establish prejudice in this regard for purposes of a stricter analysis. The defendant also criticizes other aspects of the cross-examination of Ms. McElroy and identifies certain factual aspects that counsel believes the defendant should have been brought up with. Did Perkins come up his first scheduled appointment or was it just a random trip to see the public defender? Was there any notes taken? Did she usually meet her clients or family in the hallway, et cetera? While these are all interesting points, I don't see where the prejudice is for them not being asked. None of those things in isolation or collectively establish any lack of credibility or would impeach McElroy's credibility. So it's not only like when we talk about prejudice, particularly in the Strickland standard, because this is what the defendant wants this court to look at it as, the magic bullet, that but for this particular lack of objection, this particular deficit in professional representation, my case has gone down the toilet now. That's not true. This is just essentially second-guessing in an armchair quarterbacking defense counsel's manner of cross-examination. In any sit-down context, in any Strickland context, counsel's presumed to be competent and in reviewing courts deferred to counsel's strategic choices. If she chose not to ask questions in this manner, it's certainly reasonable to argue that there was no reason to ask them in this post-conviction hearing. There was argument by defendant about not impeaching or cross-examining or going after Ms. McElroy about what defendant characterized as inconsistencies in her recollection of the locus of injury. He had apparently, the victim had apparently been shot in the shoulder. That was on the factual basis at the time of the guilty plea. McElroy testified initially that she thought he shot in the neck and then later said, well, neck or chest or throat area. And again, I say, you don't have to be flippant about it, so what? I mean, we're talking here, again, about testimony about something that occurred years after the fact. She didn't say shoulder, but she certainly identified parts of the body that are darn close to it, so she clearly understood the general location of the injury. And one could say that the shoulder and the chest are almost sort of part of the same, you know, anatomical species, if you will. So there's really nothing there, I think, that if counsel had said, well, didn't you say neck? It was really the chest. You know, most trial judges are going to look at defense counsel and say, so what? I mean, you've identified, she's identified the type of crime and the type of injury and the general location where the injury occurs. She was not going to be impeached with that manner of attacking her inconsistencies. There was also some argument on appeal about whether she should have gone more vigorously about inconsistencies in the defendant's words, about whether she spoke with another word that's being mirrored, the wisinger, the wisinger. If you look at McElroy's testimony, she was pretty clear that she just couldn't remember if she spoke with a wisinger or not. She thinks she might have, and then she said, no, I really don't think she did. And ultimately, she basically conceded that most likely she did. And that concession came as a result of allegedly ineffective assistance, ineffective counsels crossing information. So, you know, here it didn't prejudice the defendant in any way because the inconsistencies really didn't amount to anything because the state never relied upon any claim, nor did McElroy's self-reliant claim, that she actually had ever spoken to wisinger. And it was not part of the state's basis to say, well, you know, McElroy talked to wisinger and Perkins and made this determination not to pursue an alibi defense. No, because she spoke to Perkins and made the determination not to pursue an alibi defense. And that was the state's theory all along. So I would stand on the balance of my argument unless your court has any questions for me. Thank you, Your Honor. I appreciate your time. Your Honors, I respectfully disagree with my colleague about whether this court has answered the question presented in this case in Hotwire. I agree with Mr. Daly that the Sixth Amendment standard of effective assistance of counsel, as Hotwire has said, is not coextensive with reasonable assistance. But, and I think he also said, it is an essential point of comparison. And the question I think we should ask is, what is the purpose of the guarantee of effective assistance? And it is to guarantee the reliability of adversarial proceedings. And I would say, in a third stage hearing, that is precisely what we're after as well. We're after the reliability of the proceedings. And is counsel doing a good enough job to guarantee that the outcome of that hearing is as it should be? With respect to opposing counsel's discussion of foundation, foundation has specific elements. Where the conversation took place, when it took place, who was present, and who was speaking. And these are not factors that are, you know, one can outweigh the others. Because the witness can testify in great detail about where the conversation took place and the contents of it that it obviates the need for when it took place. It is an essential element of foundation. And opposing counsel compared it to other rules of evidence like relevancy. And I would disagree with that characterization simply because foundation is not a rule of evidence. It is a prerequisite to the admission of evidence. Whereas, relevancy is itself a rule of evidence. And the purpose of foundation is to shield the trier effect from inadmissible evidence. And opposing counsel himself spoke about foundation being important for reliability of evidence. And that's exactly what's at stake in the third stage hearing. Is the evidence being considered by the trial court reliable? And if McElroy, the trial counsel, could not testify as to when this conversation took place, especially given her poor recall of everything else, that's a reason to doubt her personal knowledge of this conversation. She wasn't, and maybe that's your point, but she wasn't asked when it took place. Is that? That's exactly right, Your Honor. But foundation, the burden for laying foundation is on the state here. It's their witness. It's the evidence, it's their evidence they're enlisting from this witness. So the burden is on them to ask when this conversation took place, who was there, who was speaking, and where it was. They did not do so. And, of course, my argument is that post-conviction counsel should have objected. That also leads me into the cross-examination argument, which I didn't go into simply for time purposes. But you have here a hearing where you're pitting the credibility of a practice trial attorney who is known by the trial court against that of the defendant and his mother. The only way to win this credibility contest was to undermine the trial counsel's credibility with the trial court. That's the only way, that was the only path to victory. And that brings me back to sort of what is expected of reasonable assistance. Are you – and my argument, of course, is that the level should be an amount of assistance required to fulfill the purpose of the act, to develop the record, to establish these claims. And you have a trial counsel who is testifying five years after the fact, without the benefit of her notes, and much of her testimony is things that she is not sure about. She doesn't know what other family members she spoke to. She doesn't remember the facts of the case, despite specifically saying, I remember the facts of this case specifically. And going after trial counsel for these, as opposed to counsel for some very minor things, has a cumulative effect. If you undermine her credibility on top of the fact that the contents of her conversation with Mrs. Perkins should have been excluded because it didn't have proper foundation, the state's argument really falls by the wayside because there's nothing to rebut Mr. Perkins' claim and his mother's claim – or their testimony, I'm sorry. And I would just end with the point that as much as opposing counsel – so what about some of these things? This – like I said earlier, this was the path to victory. This was the only way for Mr. Perkins to win this credibility contest. And if – I'm not saying that counsel should be expected to win, only that if this is the only avenue available and they do not pursue it, that's unreasonable. If Your Honor would like to add anything further, I would simply ask that you reverse the business report and find that third stage counsel has an obligation to be excused. Thank you. Thank you, Your Honor. This case will be taken under advisory to be excused and will be in recess until 9 o'clock in the morning.